Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2016 CO 46**

**No. 14SC99, <u>Am. Family Mut. Ins. Co. v. Hansen</u>—Insurance—Ambiguity, Uncertainty or Conflict—Persons Covered—Unfair Practices; Bad Faith; Penalties.**

Respondent Jennifer Hansen was injured in a motor vehicle accident and presented an underinsured motorist claim to petitioner American Family Mutual Insurance Company. As proof of insurance, Hansen offered lienholder statements issued to her by American Family's local agent that identified her as the named insured at the time of the accident. American Family's own records, however, indicated that the named insureds on the policy at the time of the accident were Hansen's mother and stepfather. In reliance upon the policy as reflected in its own records, American Family determined that Hansen was not insured under the policy and denied coverage. Hansen filed an action against American Family asserting, among other things, a statutory bad faith claim for unreasonable delay or denial of benefits under sections 10-3-1115 and -1116, C.R.S. (2015). The trial court ruled that the deviation in the records issued by American Family's agent and those produced by its own underwriting department created an ambiguity in the insurance policy as to the identity of the named insured, and instructed the jury that an ambiguous contract must be construed against

the insurer. The jury found that American Family had delayed or denied payment without a reasonable basis for its action. The court of appeals affirmed, finding that the lienholder statements created an ambiguity. The Colorado Supreme Court holds that because the insurance contract unambiguously named Hansen's mother and stepfather as the insureds at the time of the accident, the trial court and court of appeals erred in relying on extrinsic evidence to find an ambiguity in the insurance contract. Accordingly, American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable, and American Family cannot be held liable under sections 10-3-1115 and -1116 for statutory bad faith.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 46

### Supreme Court Case No. 14SC99

*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA1430

### Petitioner:

American Family Mutual Insurance Company,

v.

### Respondent:

Jennifer Hansen.

### Judgment Reversed

*en banc*
June 20, 2016

**Attorneys for Petitioner:**
Campbell, Latiolais & Averbach, LLC
Colin C. Campbell
Michael O. Frazier
  *Denver, Colorado*

**Attorneys for Respondent:**
Springer and Steinberg, P.C.
Michael P. Zwiebel
  *Denver, Colorado*

Kiel & Trueax, LLC
John W. Trueax
  *Greenwood Village, Colorado*

Law Office of Samuel G. Livingston
Samuel G. Livingston
  *Denver, Colorado*

**Attorneys for Amici Curiae The Colorado Civil Justice League, The American Insurance Association, The Property Casualty Insurers Association of America, and The National Association of Mutual Insurance Companies:**
Montgomery Amatuzio Dusbabek Chase, LLP

Kevin F. Amatuzio
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Gordon & Rees LLP
John R. Mann
  *Denver, Colorado*

Sutton Booker P.C.
Jacquelyn S. Booker
Katie B. Johnson
  *Littleton, Colorado*

**Attorneys for Amicus Curiae Pinnacol Assurance:**
Vaughan & DeMuro
David R. DeMuro
Jennifer C. Madsen
  *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Association of Home Builders, The Home Builders Association of Metro Denver, and Colorado BUILDS:**
Davis & Ceriani, P.C.
Scott W. Wilkinson
George R. Lyons
  *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Roberts Levin Rosenberg PC
Bradley A. Levin
Michael J. Rosenberg
  *Denver, Colorado*

**JUSTICE EID** delivered the Opinion of the Court.

¶1     Respondent Jennifer Hansen was injured in a motor vehicle accident on December 30, 2007.  Four months later, she presented an underinsured motorist ("UIM") claim to petitioner American Family Mutual Insurance Company ("American Family"), asserting coverage under an American Family auto insurance policy on her 1998 Ford Escort.  As proof of insurance, Hansen offered lienholder statements issued to her by American Family's local agent that identified her as the named insured at the time of the accident.  American Family's own records, however, including a November 2007 declaration page, indicated that the named insureds on the policy at the time of the accident were Hansen's stepfather and mother, William and Joyce Davis (the "Davises").  In reliance upon the policy as reflected in its own records, American Family determined that Hansen was not insured under the policy and denied coverage. Hansen filed an action against American Family asserting claims for breach of contract, common law bad faith, and statutory bad faith for unreasonable delay or denial of benefits under sections 10-3-1115 and -1116, C.R.S. (2015).  Prior to trial, American Family reformed the contract to name Hansen as the insured, and the parties settled the breach of contract claim, leaving only the common law and statutory bad faith claims for trial.

¶2     The trial court ruled that the deviation in the records issued by American Family's agent and those produced by its own underwriting department created an ambiguity in the insurance policy as to the identity of the named insured, and instructed the jury that an ambiguous contract must be construed against the insurer. The jury found in American Family's favor on the common law bad faith claim but in

3

Hansen's favor on the statutory bad faith claim, indicating on a special verdict form that American Family had delayed or denied payment without a reasonable basis for its action. The trial court awarded Hansen attorney fees, court costs, and a statutory penalty under section 10-3-1116.

¶3 American Family appealed the judgment and award of statutory damages to Hansen, arguing, among other things, that the trial court erred in finding that the lienholder statements created an ambiguity in the insurance contract as to the identity of the insured and that, at the very least, the contract was arguably unambiguous such that the company had a reasonable basis to deny coverage and could not be liable for statutory bad faith. The court of appeals affirmed, finding that the lienholder statements created an ambiguity and that, even assuming American Family's legal position was a reasonable one, American Family could still be held liable for statutory bad faith. Hansen v. Am. Family Mut. Ins. Co., 2013 COA 173, ¶¶ 36, 43, __ P.3d __.

¶4 We granted certiorari and now reverse. Because the insurance contract unambiguously named William and Joyce Davis as the insureds at the time of the accident, the trial court and court of appeals erred in relying on extrinsic evidence to find an ambiguity in the insurance contract. An ambiguity must appear in the four corners of the document before extrinsic evidence can be considered. See Ad Two, Inc. v. City & Cty. of Denver, 9 P.3d 373, 376–77 (Colo. 2000) ("Absent such ambiguity [in the terms of the agreement], we will not look beyond the four corners of the agreement to determine the meaning intended by the parties."). In other words, extrinsic evidence cannot create ambiguity; it is an aid to ascertaining the intent of the parties once an

4

ambiguity is found. Accordingly, American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable, and American Family cannot be held liable under sections 10-3-1115 and -1116 for statutory bad faith. We therefore reverse and remand the case for further proceedings consistent with this opinion.

## I.

¶5 Hansen bought a 1998 Ford Escort on May 18, 2002. At trial, Hansen testified that she purchased an insurance policy on the car in 2002 from the Heath Burchill American Family Insurance Agency ("Burchill"), an American Family captive agent. On April 9, 2007, Hansen went to Burchill's office to add more coverage to the policy on her Ford Escort. On that date, Hansen obtained a lienholder statement from Burchill (the "2007 lienholder statement"). Apart from a note at the top of the page stating, "FOR LIENHOLDER USE," the document resembles the declaration page of an insurance policy. It lists a policy inception date of August 1, 2002, effective dates of "12-15-2006 UNTIL CANCELLED," $100,000 per person in underinsured motorist coverage, and "DAVIS, JENNY" as the named insured. Although Hansen has never been named Jenny Davis, Davis is Hansen's stepfather's and mother's last name.

¶6 On December 30, 2007, Hansen sustained injuries when she was a passenger in a vehicle owned and operated by her boyfriend. Because her boyfriend carried only $25,000 in insurance, Hansen filed a claim for UIM benefits on April 24, 2008, from American Family.

¶7 In contrast to the 2007 lienholder statement issued by Burchill to Hansen, American Family's own underwriting department produced a declaration page effective from November 26, 2007, to August 1, 2008 (the "November 2007 declaration page") naming "DAVIS, WILLIAM & JOYCE"—Hansen's stepfather and mother—as the insureds.[1] Because Hansen would be covered under her parents' policy only if she resided with them, the American Family claims adjuster assigned to her case made repeated unsuccessful attempts in April and May of 2008 to contact Hansen and determine her residence.

¶8 The matter lay dormant until the fall of 2009, when Hansen received an offer from her boyfriend's insurer to settle her claim for the policy limits of $25,000. In response, Hansen contacted Burchill and requested a copy of her policy. She received a lienholder statement dated January 13, 2010, identifying "HANSEN, JENNIFER" as the named insured at the time of the accident. This document listed the same policy

---

[1] A declaration page "was attached to the front of the policy at the time it was issued and an amended declaration was mailed to the named insured in the normal course of business upon amendment of the policy." Hansen, ¶ 25. American Family produced historical declaration pages insuring Hansen's 1998 Ford Escort for effective periods of (1) August 1, 2002, to August 1, 2003; (2) October 1, 2002, to August 1, 2003; (3) April 9, 2007, to August 1, 2007; (4) November 26, 2007, to August 1, 2008; (5) April 23, 2008, to August 1, 2008; (6) January 31, 2009, to August 1, 2009; and (7) June 1, 2009, to August 1, 2009. Each declaration page contained "information particular to the policy, including: (1) the policy number; (2) the named insureds; (3) effective dates; (4) a description of the insured vehicle; (5) coverages and limits of liability; (6) identification of applicable endorsements, which here include the UIM coverage; and (7) an identification of the insurance agency." Id. Additionally, each stated that "[t]hese declarations form a part of this policy and replace all other declarations which may have been issued previously for this policy." All these declaration pages listed the Davises as the named insureds.

number and vehicle description as the 2007 lienholder statement, but now showed effective dates of "12-01-2007 to 08-01-2009."

¶9 On January 18, 2010, American Family sent Hansen a letter requesting verification of Hansen's residence at the time of the accident, in order to determine her eligibility for UIM coverage under her parents' policy. The letter advised Hansen that if she did not respond, the claim would be closed. On March 1, 2010, Hansen's attorney sent American Family a letter enclosing the January 13, 2010, lienholder statement and requesting permission to settle with Hansen's boyfriend's insurance company. Relying on the certified policy obtained from its own underwriting department, American Family denied coverage on April 27, 2010.

¶10 On August 5, 2010, Hansen filed an action against American Family asserting claims for breach of contract, common law bad faith, and statutory bad faith for unreasonable delay or denial of benefits under sections 10-3-1115 and -1116.[2] In light of

---

[2] Section 10-3-1115 provides in relevant part that

> (1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.
>
> . . .
>
> (2) Notwithstanding section 10-3-1113(3), for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Section 10-3-1116(1) provides that

> A first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

7

the conflicting records maintained by American Family and its agent, Hansen argued, American Family had not conducted a reasonable investigation into her insurance claim.

¶11 On December 8, 2010, Hansen filed a motion for partial summary judgment, arguing that the discrepancy between American Family's own records and those issued by its agent rendered the identity of the named insured ambiguous. On December 27, 2010, American Family filed a cross-motion for summary judgment, asserting that the insurance policy unambiguously identified the Davises as the named insureds, that Hansen did not reside with her parents at the time of the accident, and that the policy therefore afforded Hansen no UIM coverage.

¶12 On January 5, 2011, however, American Family filed a motion to withdraw its cross-motion for summary judgment on the question of ambiguity. The motion stated that American Family had learned that Hansen owned the Ford Escort and had done so since the inception of the policy in 2002. American Family stated that the coverage issue was moot because it was voluntarily electing to reform the policy on the Ford Escort to provide coverage to the vehicle's owner. American Family emphasized that its motion was not a confession of Hansen's own motion for summary judgment, but that "the circumstances of this claim permit[ted], but [did] not compel" its choice to reform the policy. On March 1, 2011, after mediation, the parties settled the contract claim for the maximum policy benefit of $75,000 (the $100,000 UIM policy limit minus the $25,000 Hansen had already received from her boyfriend's insurance company).

¶13    This settlement, however, did not end the dispute over Hansen's common law and statutory bad faith claims. On March 9, 2011, American Family filed a motion for determination of a question of law, again arguing that the Davises were the named insureds. On April 12, 2011, the trial court denied the motion, ruling that there were material questions of fact in dispute regarding the identity of the named insured at the time of the accident.

¶14    On April 27, 2011, the third day of trial, the trial court determined that the insurance contract was ambiguous as a matter of law. In reaching this conclusion, the court relied on D.C. Concrete Management, Inc. v. Mid-Century Insurance Co., 39 P.3d 1205 (Colo. App. 2001), in which the court of appeals found an insurance contract ambiguous where the designation of the named insured was unclear. See id. at 1208 ("From the language 'Rafael Sanchez DC Concrete Management,' one cannot tell whether there is one named insured or two. Nor can it be ascertained whether DC Concrete Management is intended as a d/b/a designation for an individual or refers to a separate business entity."). The trial court held that the identity of the named insured here was similarly unclear and therefore ambiguous as a matter of law, and that, accordingly, it would instruct the jury that the contract was to be construed against the insurance company.

¶15    The jury found in American Family's favor on Hansen's common law bad faith claim but in Hansen's favor on her statutory claim. Relevant here, in two special verdict forms, the jury found that (1) Hansen was the named insured; (2) American Family had delayed or denied payment without a reasonable basis in violation of section 10-3-1115;

but (3) the UIM benefit for which payment was delayed or denied without a reasonable basis was $0. The trial court awarded Hansen attorney fees and costs pursuant to section 10-3-1116, but did not enter a monetary award. On May 9, 2011, Hansen filed a motion to amend the verdict, requesting that the court award a penalty of two times the covered benefit, or $150,000, under section 10-3-1116. The trial court granted the motion.

¶16 On May 10, 2011, American Family filed its own motion to reconsider entry of judgment, arguing that it could not have denied Hansen's claim without a reasonable basis when the identity of the named insured was "fairly debatable." See Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1275 (Colo. 1985) ("[A]n insurance company . . . may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." (quoting Anderson v. Cont'l Ins. Co., 271 N.W.2d 368, 377 (Wisc. 1978))). The trial court denied the motion, and issued a final judgment in Hansen's favor for $199,683.28 in attorney fees and costs and a statutory penalty of $150,000 under section 10-3-1116.

¶17 American Family appealed the judgment and award of statutory damages to Hansen, arguing that the trial court erred by (1) concluding that the insurance policy was ambiguous and referring its construction to the jury; (2) denying American Family's motion to reconsider entry of judgment when the identity of the named insured was "fairly debatable"; (3) entering judgment in Hansen's favor on her statutory claim when the jury found that the UIM benefit for which payment was delayed or denied without a reasonable basis was $0; and (4) awarding two times the

10

covered benefit under section 10-3-1116(1) without setting off the $75,000 settlement against the statutory penalty.

¶18    The court of appeals upheld the judgment and award of damages. The court of appeals, like the trial court, found that "the preparation and delivery to the claimant of a lienholder statement by the insurance agent which was inconsistent with the declaration pages maintained by the insurance company" created an ambiguity in the insurance policy as to the identity of the named insured. Hansen, ¶ 34. Consequently, the court of appeals concluded that although the trial court erred in instructing the jury regarding the contract, the error was harmless because the jury was properly instructed in how to resolve the ambiguity. Id. at ¶ 36 n.2.

¶19    The court of appeals also rejected American Family's argument that because the identity of the named insured was "fairly debatable," the company could not have unreasonably delayed or denied payment of a benefit under sections 10-3-1115 and -1116 as a matter of law. Id. at ¶ 37. Even assuming that coverage was "fairly debatable" because the policy was arguably unambiguous as to the named insured, the court of appeals held, American Family was not entitled to judgment as a matter of law on Hansen's statutory claim. Id. at ¶ 43.

¶20    The court of appeals also held that the $0 entered by the jury did not matter because the parties had defined the covered benefit for purposes of section 10-3-1116 in their mediated settlement of Hansen's breach of contract claim for $75,000. Id. at ¶¶ 53, 58. Finally, the court of appeals rejected American Family's argument that the covered benefit ($75,000) had to be set off from "two times the covered benefit" under section

11

10-3-1116, reasoning that the statutory language did not require such a setoff. Id. at ¶¶ 59, 63.

¶21 We granted certiorari[3] and now reverse. Because the insurance contract unambiguously named William and Joyce Davis as the insureds at the time of the accident, the trial court and court of appeals erred in using the extrinsic evidence of the lienholder statements to find an ambiguity in the contract. Accordingly, American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable, and the company cannot be held liable under sections 10-3-1115 and -1116 for statutory bad faith. We therefore reverse and remand the case for further proceedings consistent with this opinion.

---

[3] We granted certiorari to review the following issues:

1. Whether the court of appeals impermissibly relied upon extrinsic evidence to conclude that the respondent's insurance policy was ambiguous.
2. Whether the court of appeals erred in perceiving a factual issue with regard to the reasonableness of the insurer's initial denial of the insured's claim, despite its assumption that the insurer's coverage position was "fairly debatable."
3. Whether the respondent may recover under section 10-3-1116, C.R.S. (2014), despite the jury's determination that the amount of the claim for which payment was unreasonably delayed or denied was "0."
4. Whether section 10-3-1116, C.R.S. (2014), authorizes an insured whose claim has been unreasonably delayed or denied to bring an action to recover two times the covered benefit in addition to the covered benefit itself.

¶22   American Family argues that the court of appeals erred in holding that lienholder statements extrinsic to the insurance contract created an ambiguity in the contract.  We agree.

¶23   Whether a contract is ambiguous is a question we review de novo.  Fed. Deposit Ins. Corp. v. Fisher, 2013 CO 5, ¶ 9, 292 P.3d 934, 937.  In this case, there is no dispute that the November 2007 declaration page named "DAVIS, WILLIAM & JOYCE" as the insureds at the time of the accident.  Hansen, ¶ 26.  There also is no dispute that the November 2007 declaration page was part of the insurance contract.  See 16 Williston on Contracts § 49:25 (4th ed. 2016) ("The contents of a declarations sheet, or the declarations page, of an insurance policy is regarded as part of the insurance contract.").  Finally, there is no dispute that a declaration page such as the November 2007 declaration page at issue in this case defines the coverage available under the policy.  See id. ("[The declarations page] is held to define the coverage afforded the insured . . . .").  Hansen argues, however, that the 2007 lienholder statement[4] issued by Burchill naming Jenny Davis as the insured creates an ambiguity in the insurance contract as to the identity of the insured on the date of the accident.

¶24   An insurance contract is subject to the general rules of contract interpretation.  USAA Cas. Ins. Co. v. Anglum, 119 P.3d 1058, 1059 (Colo. 2005).  A contractual term is

---

[4] American Family describes a lienholder statement in the insurance context as a document generated by the insurance agency and provided to third persons, typically an insured's lender, to verify that an insured has obtained coverage for a financed vehicle.  Hansen does not dispute this description.

ambiguous "if it is susceptible on its face to more than one reasonable interpretation." Id. at 1059–60. Absent such ambiguity, "we will not look beyond the four corners of the agreement to determine the meaning intended by the parties." Ad Two, 9 P.3d at 376–77. In this case, there is no ambiguity with regard to the identity of the insureds "DAVIS, WILLIAM & JOYCE." Those names do not include Hansen.

¶25    In reaching a contrary conclusion, the trial court relied on D.C. Concrete Management, Inc. v. Mid-Century Insurance Co., 39 P.3d 1205 (Colo. App. 2001). In that case, the court of appeals concluded that an insurance policy identifying the insured as "Rafael Sanchez DC Concrete Management" was ambiguous because it was impossible to tell if there was one named insured or two. Id. at 1208. As the court of appeals observed, it could not ascertain from the designation of the insured "whether DC Concrete Management is intended as a d/b/a designation for an individual or refers to a separate business entity." Id. Unlike the policy at issue in D.C. Concrete, however, the November 2007 declaration page plainly identifies the Davises as the named insureds on the date of the accident. Thus, as the court of appeals correctly observed here, "[no] ambiguity arises . . . from an ambiguous designation of the named insured on the applicable declaration page." Hansen, ¶ 34.

¶26    Although the court of appeals determined that there was no ambiguity as to the named insureds on the November 2007 declaration page, it went on to conclude that an ambiguity was created by "the preparation and delivery to the claimant of a lienholder statement by the insurance agent which was inconsistent with the declaration pages maintained by the insurance company." Id. The problem with finding that this

14

extrinsic evidence created an ambiguity is that an ambiguity must appear in the four corners of the document <u>before</u> extrinsic evidence can be considered.  <u>See</u> <u>Ad Two</u>, 9 P.3d at 376–77 ("Absent such ambiguity [in the terms of the agreement], we will not look beyond the four corners of the agreement to determine the meaning intended by the parties.").  In other words, extrinsic evidence cannot create ambiguity; it is an aid to ascertaining the intent of the parties once an ambiguity is found.

¶27    For example, in <u>USI Properties East, Inc. v. Simpson</u>, 938 P.2d 168 (Colo. 1997), the plaintiff raised several arguments regarding the intention of the parties contrary to the plain and unambiguous meaning of a water rights stipulation.  We rejected these arguments, noting that "we do not use extraneous evidence to prove intent where no ambiguity exists."  <u>Id.</u> at 174 n.8.  Because the stipulation was free from ambiguity, we held, "we will enforce it as written without looking beyond it for a different interpretation."  <u>Id.</u> at 174.  <u>USI Properties East</u> is simply one case applying the fundamental principle of contract law that an unambiguous contract cannot be made ambiguous by extrinsic evidence.  <u>See, e.g.</u>, <u>Fisher</u>, ¶ 1, 292 P.3d at 935; <u>Ad Two</u>, 9 P.3d at 376–77; <u>Cheyenne Mountain Sch. Dist. No. 12 v. Thompson</u>, 861 P.2d 711, 715 (Colo. 1993); <u>Schmelzer v. Condit</u>, 195 P. 323, 324 (Colo. 1920).

¶28    Here, the dispute is not over the meaning of "DAVIS, WILLIAM & JOYCE" on the declaration page, but rather over whether the designation of Hansen's parents as the named insureds on the policy insuring her Ford Escort accurately reflected the intent of the parties.  Because there was no disagreement over the meaning of the contract terms as written, extrinsic evidence was not admissible to create an ambiguity.

¶29    Hansen makes a slightly different argument that Burchill's issuance of the 2007 lienholder statement to her created an ambiguity because insurance agents have the authority to bind insurance companies. We need not consider whether agents have such authority generally or if the agent had such authority in this case, however, because Hansen does not claim that the 2007 lienholder statement constitutes a contract of insurance standing on its own, nor does she explain how it could modify the November 2007 declaration page naming her mother and stepfather as the insureds. Nor can she rely on the January 13, 2010, lienholder statement, given that the agent's issuance of a lienholder statement two years after the accident cannot have any effect on the identity of the named insured at the time of the accident. At bottom, this alternative argument fails for the same reason stated above, namely, that extrinsic evidence is not admissible where there is no ambiguity in the contract itself.

¶30    Hansen further argues that, even if the insurance contract itself is unambiguous, ambiguity nevertheless arises under the doctrine of reasonable expectations. In Colorado, the reasonable expectations of insureds have "succeeded over exclusionary policy language . . . where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise." Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1048–49 (Colo. 2011). Hansen argues that, by issuing her a document identical to a declaration page in every respect save for the notation "FOR LIENHOLDER USE," Burchill created a reasonable expectation of coverage—and that, as this court noted in Bailey, "honoring the reasonable expectations of insureds over

16

exclusionary contract language may be appropriate even in the absence of contract ambiguity." Id. at 1054. However, the doctrine of reasonable expectations applies only to "the reasonable expectations of insureds," id. (emphasis added), and thus only after it is determined that the claimant is an insured. In this case, Hansen cannot rely on her reasonable expectations to establish her identity as the named insured when the November 2007 declaration page unambiguously identifies "DAVIS, WILLIAM & JOYCE" as the insureds.

¶31 Importantly, a finding of no ambiguity does not leave Hansen without a remedy. Indeed, she could have sought reformation of the contract to accurately reflect the intention of the parties. See, e.g., Md. Cas. Co. v. Buckeye Gas Prods. Co., Inc., 797 P.2d 11, 14 (Colo. 1990) (holding that reformation of an insurance contract was appropriate where there was a mutual mistake as to the date when an additional insured was to be added to the policy). And in fact, after receiving documentation from Hansen verifying that she was the owner of the vehicle, American Family elected to reform the policy to substitute Hansen for her mother and stepfather as the named insured and provide coverage for her injuries. Hansen, ¶¶ 9–10.

¶32 Because we find that the November 2007 declaration page unambiguously named William and Joyce Davis as the insureds, we conclude that the court of appeals erred in relying on extrinsic evidence to find an ambiguity in the contract. We further hold that American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable. Under section 10-3-1115, an insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a

17

covered benefit <u>without a reasonable basis for that action</u>." § 10-3-1115(2) (emphasis added). Hansen's statutory claim must therefore fail, because American Family had a reasonable basis for denying coverage. We note that Hansen does not dispute American Family's argument that if the contract is unambiguous, its denial of coverage was reasonable. Because we find that American Family had a reasonable basis for denying coverage based on the unambiguous language of the contract, we need not consider its alternative argument that its denial of coverage was, at the very least, a "fairly debatable" position.

¶33 Given our holding that Hansen's statutory claim fails based on the unambiguous language of the insurance contract, she cannot recover attorney fees, court costs, or two times the covered benefit under section 10-3-1116(1). We thus need not reach American Family's arguments regarding the jury's finding of $0 unreasonably delayed or denied and the proper calculation of the statutory penalty.

**III.**

¶34 For the foregoing reasons, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

18