**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROCKHILL INSURANCE COMPANY,

    Plaintiff - Counter Defendant -
Appellee

v.

CFI-GLOBAL FISHERIES
MANAGEMENT; HEIRLOOM I, LLC.,

    Defendant - Counterclaimant -
Appellant.

Nos. 18-1201 & No. 18-1207
(D.C. No. 1:16-CV-02760-RM-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **LUCERO**, and **MORITZ**, Circuit Judges.
_____

CFI-Global Fisheries Management ("CFI") and Heirloom I, LLC.,

("Heirloom") appeal a district court order granting summary judgment in favor of

Rockhill Insurance Company ("Rockhill"). The district court concluded that an

exclusion in CFI's professional liability policy for faulty workmanship barred

recovery for damages related to poor design and construction of a river enhancement

project. It further ruled that CFI's bad faith claims failed because the company did

_____

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

not show Rockhill caused a business loss. We affirm the district court's order as to CFI's common law bad faith claim. However, we conclude the faulty workmanship exclusion does not apply to damages caused by negligent design work. We reverse the district court's rulings on coverage under the professional liability policy and CFI's statutory bad faith claim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings consistent with this order and judgment.

## I

Heirloom owned property in southwestern Colorado. In 2012, it contracted with CFI to design and construct a fisheries enhancement project on the property. CFI completed the project, but its work was defective and the project was destroyed by natural processes four times in three years. Heirloom paid more than $800,000 to CFI under the contract.

On July 20, 2015, Heirloom initiated arbitration proceedings against CFI for breach of contract and negligence related to the design and execution of the project. CFI requested that Rockhill, its professional and general liability insurer, defend it in the arbitration. CFI had taken out an insurance policy with Rockhill, which included three coverage components: (1) commercial general liability coverage, which generally applies to "'bodily injury' or 'property damage'" but excludes coverage for liability arising from professional services; (2) contractor's pollution liability coverage; and (3) professional liability coverage. The professional liability coverage form applies to damages arising from a "[p]rofessional services incident," defined as

2

"any negligent act, error or omission" in "your rendering, or your failing to render, 'professional services'" that "results in injury or damage." It also states that "your work" means: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

On August 21, 2015, Rockhill sent CFI a letter agreeing to defend the arbitration but reserving its right to deny coverage. In outlining Rockhill's coverage position, the insurer implied some of the damages could fall within the policy, but discussed several exclusions that might apply. Rockhill identified Exclusion M of the professional liability policy, which reads in full:

> **M. Faulty Workmanship**
> Based upon, arising out of or for any loss, cost or expense incurred to withdraw, recall, inspect, repair, replace, adjust, remove or dispose of "your work". This includes, but is not limited to, the cost to investigate "your work", or the cost of any materials, parts, labor or equipment furnished in connection with such withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal.

Rockhill also noted Exclusion P of the professional liability policy, which states:

> **P. Expressed or Implied Warranties**
> Based upon, as a consequence of or arising out of:
> (1) Any expressed or implied warranties or guarantees, or
> (2) Any cost or other estimates for construction, renovation, removal or demolition being exceeded or inaccurate.
> However, this exclusion does not apply to a warranty or guaranty by you that your "professional services" are in conformity with generally accepted architectural or engineering standards.

The letter states that Heirloom's "allegations relative to CFI's designs potentially implicate a 'professional services incident' that would trigger coverage" but "[t]o the extent that the damages sought arise out of . . . faulty workmanship apart from your

3

professional services . . . the [Professional Liability] Form will not provide coverage for such damages."

In November 2015, Rockhill offered to settle with Heirloom for $15,000. Heirloom promptly rejected this offer, demanding $990,000. A year passed with no additional settlement offers. On October 3, 2016, two weeks before the arbitration was set to begin, Rockhill wrote to CFI that the entirety of the damages claimed were excluded from coverage. The insurer proposed CFI agree to fund a settlement with Heirloom in which CFI would pay 75% of settlement costs up to $500,000, with Rockhill paying the remaining 25%. CFI responded on October 11, stating Rockhill's proposal was a breach of its duties as an insurer and demanding Rockhill immediately pursue and fund settlement with Heirloom. Three days later, Heirloom made a settlement proposal of $750,000. CFI asked Rockhill to accept and fund the offer. Rockhill responded that it would be willing to pay $150,000 towards the settlement.

The arbitration proceeded from October 17 to 21, 2016. During the arbitration, Rockhill informed CFI it had offered an updated settlement of $260,000 to Heirloom, after CFI explained it could contribute only $10,000 to a settlement offer. Internal communications indicate Rockhill authorized a potential offer up to $400,000. The arbitrators awarded Heirloom $609,994.91 plus pre-judgment interest. The parties subsequently stipulated to an additional $265,000 award of attorney's fees and costs. Neither party requested the arbitrators' decision be accompanied by an explanation of reasoning. However, attached to the final award is a spreadsheet

4

identifying invoices paid to third party contractors who worked on the river enhancement project following CFI's failures, and a line item for remaining construction.

Rockhill filed a declaratory-judgment action against CFI and Heirloom prior to the issuance of the award. It sought a declaration that it had no duty to defend and indemnify CFI in connection with the Heirloom arbitration. CFI and Heirloom asserted counterclaims for declaratory judgment and breach of contract. CFI also asserted statutory and common law bad faith claims against Rockhill based upon its failure to timely settle. The district court granted summary judgment for Rockhill, holding the entirety of the damages awarded to Heirloom were excluded under the policy's Faulty Workmanship exclusion, along with the attorneys' fees and costs. On CFI's bad faith claims, the court held that CFI failed to present any evidence to prove any business loss caused by non-settlement. CFI and Heirloom timely appealed.

**II**

We review de novo the grant of summary judgment. MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co., 558 F.3d 1184, 1189 (10th Cir. 2009). In doing so, we view the facts in the light most favorable to the non-moving party. Id. at 1189-90. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We apply Colorado substantive law in this diversity action. See Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1175 (10th Cir. 2008). We "look to the rulings of the highest state court" to guide our interpretation of state law.

5

Stickley v. State Farm Mut. Auto. Ins. Co., 505 F.3d 1070, 1077 (10th Cir. 2007) (quotation omitted). If the highest state court has not addressed a question, we predict how it would rule after giving "proper regard to relevant rulings of other courts of the State." Id. (quotation omitted).

**A**

Under Colorado law, "[a]n insurance contract is subject to the general rules of contract interpretation." Am. Family Mut. Ins. Co. v. Hansen, 375 P.3d 115, 120 (Colo. 2016). "It is axiomatic that a contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." E. Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co., 109 P.3d 969, 974 (Colo. 2005). We apply "the plain and generally accepted meaning of the words used," id., but "ascertain the meaning of the contract by examining the entire instrument and not by viewing clauses or phrases in isolation." Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 697 (Colo. 2009) (quotation omitted).

We agree with the district court that the damages awarded by the arbitrators resulted from a "professional services incident." Thus, the only issue is whether an exclusion places the damages award outside of otherwise available coverage. "Exclusions must be clear and specific to be enforceable." Hoang v. Assurance Co. of Am., 149 P.3d 798, 802 (Colo. 2007). In determining whether the Faulty Workmanship exclusion barred coverage, the district court focused on a broad definition of "work" as an "activity involving mental or physical effort done in order to achieve a purpose or result." New Oxford American Dictionary 1990 (3d ed.

6

2010). It thus held the Faulty Workmanship exclusion's references to "your work" applied to both design and construction.

We disagree, and conclude the district court failed to assess the context in which the term work is used. "A word may take on a variety of meanings in different contexts. Dictionaries can inform us of all the accepted meanings, but not which of those meanings fits in a particular context." Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1143 (10th Cir. 2008). And we pay particular attention to context when a term has some definitions that are "virtually boundless." See Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 498 (10th Cir. 1994) (quotation omitted). Three contextual guideposts convince us that the Faulty Workmanship exclusion was not intended to cover design failings.

First, the clause appears in a professional liability policy. As a general matter, such policies cover damages arising from professional services rendered—in this case, CFI's professional design service in providing a plan for the stream modification. Professional services are those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab., 529 F.3d 916, 924 (10th Cir. 2008) (quotation omitted). Thus, the overall purpose of the professional liability coverage was for CFI to obtain insurance for its "mental or intellectual" undertakings rather than its "physical or manual" work. Accordingly, the cases

Rockhill cites construing similar exclusions in commercial general liability policies do not govern our interpretation of a professional liability policy.

Second, the heading "Faulty Workmanship" clearly evinces the narrower scope of the exclusion.[1]  As Rockhill itself stated to CFI:  "To the extent that the damages sought arise out of . . . <u>faulty workmanship apart from your professional services</u> . . . the [Professional Liability] Form will not provide coverage for such damages."  The term "workmanship" typically refers to "the art or skill of a workman," which is an individual "employed or skilled in some form of manual, mechanical or industrial work."  <u>See</u> Random House Webster's College Dictionary (2d ed. 2000).  Consistent with the general purpose of professional liability coverage, the term distinguishes manual and physical work from professional undertakings.  <u>See</u> <u>Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.</u>, 508 F. App'x 180, 184 (3d Cir. 2012) (unpublished) (holding that design services fall outside the ordinary definition of workmanship).

Finally, the words in the body of the exclusion are more naturally read as relating to construction, rather than design.  The exclusion removes coverage for the costs to "withdraw, recall, inspect, repair, replace, adjust, remove or dispose of" work, including "any materials, parts, labor or equipment furnished."  Read as a

---

[1] The district court did not give any weight to this phrase, concluding it was merely a heading.  But Colorado courts refer to headings in interpreting contracts.  <u>See, e.g.</u>, <u>Fed. Deposit Ins. Corp. v. Fisher</u>, 292 P.3d 934, 937 (Colo. 2013).  And CFI correctly notes that the exclusion is incoherent absent the "Faulty Workmanship" heading.  Without those words, the policy would read:  "This insurance does not apply to:  . . . Based upon, arising out of or for any loss . . . ."

whole and in the context of the coverage agreements, we thus conclude the parties intended the Faulty Workmanship exclusion to distinguish non-covered construction work from covered professional services.

The district court should not have granted summary judgment to Rockhill as to the design components of CFI's work for Heirloom. Because the district court concluded otherwise, it did not consider whether the entire arbitration award (including attorney's fees and costs) is covered under a correct reading of the exclusion or whether the damages should or can be apportioned between design and construction. We thus leave that issue for the district court to consider in the first instance.[2]

**B**

CFI challenges the district court's dismissal of its bad faith claim on two grounds. First, it argues that statutory damages are available. Per Colorado statute, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed." Colo. Rev. Stat. § 10-3-1115(1)(a). An insured "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." § 10-3-1116(1).

---

[2] Rockhill also argues in the alternative that the exclusion for "Expressed or Implied Warranties" bars coverage. It points to statements by Heirloom that CFI failed to warranty and repair work and thus breached its contract and/or warranty. As the district court explained, Rockhill failed to identify any particular warranty or show that the arbitration damages were related to the unidentified warranty. It again fails to do so before this court.

Because the district court concluded that the arbitration award was not covered, it did not consider whether Rockhill unreasonably denied or delayed coverage. See State Farm Mut. Auto. Ins. Co. v. Fisher, 418 P.3d 501, 506 (Colo. 2018) ("[S]ection 10-3-1115's plain language is clear, and it imposes the duty it says it imposes—that is, an insurer can't unreasonably delay or deny paying a covered benefit without a reasonable basis for doing so."). Instead, the bulk of the district court's analysis looked to whether Rockhill caused CFI a business loss. But the statute contains no requirement that an insured provide evidence of specific business loss or damages. See Hansen v. Am. Family Mut. Ins. Co., 383 P.3d 28, 38 (Colo. App. 2013), rev'd on other grounds, 375 P.3d 115 (Colo. 2013). Accordingly, the district court should not have dismissed CFI's claim for statutory bad faith damages for failure to demonstrate evidence of business loss. We remand so the district court may consider whether CFI's statutory claim meets the required reasonableness standard in light of our coverage holding.

Second, CFI challenges the dismissal of its common law bad faith claim. CFI alleges that Rockhill's refusal to settle with Heirloom caused the destruction of its business. An insurer's bad faith breach of an insurance contract can give rise to tort liability. Nunn v. Mid-Century Ins. Co., 244 P.3d 116, 119 (Colo. 2010). "For an insured to prevail on a bad faith claim against an insurer, the insured must establish the insurer acted unreasonably, causing damages to the insured." Bankr. Estate of Morris v. COPIC Ins. Co., 192 P.3d 519, 523 (Colo. App. 2008).

10

The district court held CFI failed to adduce evidence indicating that non-settlement caused CFI a business loss. We agree. To prevail on a common law bad faith claim, CFI must show that both its business declined <u>and</u> Rockhill's alleged bad faith actions during settlement negotiations caused the decline. Although CFI presented evidence that its business declined precipitously after the dispute with Heirloom arose, it provided no evidence that Rockhill's actions caused that lost business. And mere assertions that the timing of its business decline aligned with the settlement negotiations are insufficient. <u>See</u> <u>Norris v. Baxter Healthcare Corp.</u>, 397 F.3d 878, 885 (10th Cir. 2005) ("[C]orrelation does not equal causation."). Without evidence of a causational (not correlational) link, CFI's non-settlement claim necessarily fails.[3]

## III

For the forgoing reasons, we **AFFIRM** the district court's dismissal of CFI's common law bad faith claim based on non-settlement. However, we **REVERSE** the district court's grant of summary judgment on the application of the Faulty

---

[3] CFI also argues Rockhill inappropriately advanced a recoupment claim without having reserved its right to do so. <u>See</u> Colo. Rev. Stat. § 13-20-808(7)(b)(III). However, the district court correctly held CFI failed to support its assertion that the company expended resources defending that claim, which was later abandoned.

Workmanship exclusion to CFI's design work and its grant of summary judgment on CFI's claim of statutory bad faith.  We **REMAND** for further proceedings consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge