FILED
United States Court of Appeals
Tenth Circuit

July 5, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

THE HOME LOAN INVESTMENT
COMPANY, a Colorado corporation,

     Plaintiff - Appellee,

v.

THE ST. PAUL MERCURY
INSURANCE COMPANY, d/b/a or
a/k/a TRAVELERS, a Connecticut
corporation,

     Defendant - Appellant.

No. 15-1018

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:12-CV-02308-CMA-CBS)**

_____

John M. Palmeri (John R. Mann with him on the briefs), Gordon & Rees,
LLP, Denver, Colorado, for Defendant–Appellant.

Laurin D. Quiat (Nathan A. Schacht with her on the brief), Baker &
Hostetler LLP, Denver, Colorado, for Plaintiff–Appellee.

_____

Before **BACHARACH**, **EBEL**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

## I.   INTRODUCTION

This appeal is from a jury verdict finding that Defendant St. Paul Mercury Insurance Company (St. Paul) unreasonably delayed or denied payment of insurance benefits to Plaintiff Home Loan Investment Company (Home Loan) in violation of Colorado law. Following trial, St. Paul moved for judgment as a matter of law (JMOL) under Rule 50(b) or, alternatively, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. The district court denied relief, and St. Paul filed a timely appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## II.   BACKGROUND

The facts of this case are largely undisputed. Home Loan, a financial institution, held a deed of trust on a property in Grand Junction, Colorado, known as White Hall. The owner had stopped making payments on the loan and offered Home Loan a deed to White Hall in lieu of foreclosure. Home Loan opted instead to work with the owner in selling the property, with the hope of being paid out of the proceeds of the sale. Because the owner indicated she could no longer pay insurance premiums on White Hall, Home Loan contacted St. Paul to obtain coverage for the value of its loan.

St. Paul and Home Loan had an existing business relationship through which St. Paul provided foreclosed property protection to Home Loan. Upon receiving Home Loan's request to add the White Hall loan to its policy, St. Paul agreed to bind the property for ten days but indicated it would need additional information to complete the underwriting process. St. Paul then sent Home Loan a questionnaire,

2

asking it to identify the nature of its interest in White Hall. The questionnaire

provided four options to describe the nature of Home Loan's interest:

a) Bank has actual title to the property.
b) Bank is holding the property during the statutory period of redemption.
c) Bank is the mortgagee in possession of real property with the agreement or consent of the borrower.
d) Bank is in the process of foreclosing—formal proceedings have been started and papers have been filed in the proper legal jurisdiction.

Because Home Loan did not have title, was not holding the property in a period of

redemption, and was not in the formal process of foreclosing, it chose option "c."

Based on this representation, St. Paul issued an endorsement effective

January 1, 2011, adding White Hall to Home Loan's Foreclosed Property Protection

policy with a coverage limit of $471,483, the value of the White Hall loan. Home

Loan's foreclosed property protection policy defined "foreclosed property" as:

any building or structure that you:
• acquire by legal enforcement of a lien through a foreclosure proceeding;
• acquire by obtaining a deed in lieu of foreclosure; or
• hold as a mortgagee in possession.

The policy further defined "mortgagee in possession" as "a mortgagee of a building

or structure who is in possession of it or who has assumed the care, custody, or

control of such building or structure on behalf of the mortgagor with the agreement

or assent of the mortgagor." However, the policy did not define "possession" or

"care, custody, or control."

On September 15, 2011, White Hall was nearly destroyed in a fire. Home Loan

tendered a claim to St. Paul for the loss, equal to the outstanding loan balance. On

October 12, 2011, St. Paul requested additional information and documentation relating to White Hall. Specifically, St. Paul asked, "Who has possession of property or care, custody or control of the property?" Eric Daugherty, a loan officer with Home Loan, responded that Rosemarie - Glas, the owner of White Hall, had possession.

On October 19, 2011, St. Paul sent Home Loan a reservation of rights letter in which it raised "an issue that may affect coverage for [the] claim." St. Paul identified the issue as "the definition of foreclosed property and whether the property in question qualifies under the policy as a 'Foreclosed Property' for the purposes of coverage." The parties also exchanged emails on October 19. St. Paul's claims adjuster reported that St. Paul's review, "seems to indicate that no foreclosure proceedings had started on this property as of the time of the loss." In response, Home Loan indicated it had selected "mortgagee in possession" on the questionnaire "mainly due to a process of elimination" because the other choices were inapplicable.

On November 21, 2011, St. Paul denied Home Loan's claim because White Hall did not meet the definition of "foreclosed property" in Home Loan's policy. The denial letter stated:

> Because the property was not 1) acquired by legal enforcement of a lien through a foreclosure proceeding, 2) acquired by obtaining a deed in lieu of foreclosure, or 3) held as a mortgagee in possession, the property does not meet the definition of a *Foreclosed Property* under the policy. As such, we regret that we will be unable to issue any payment on your claim.

4

St. Paul determined Home Loan had never been a mortgagee in possession of the property and therefore White Hall did not qualify as a Foreclosed Property under the policy. With its denial letter, St. Paul included a check refunding Home Loan's premium payment. St. Paul also amended Home Loan's policy to remove White Hall from the list of Foreclosed Properties.

Home Loan filed suit in Colorado state court, alleging claims for common-law breach of contract and violations of sections 10-3-1115 and 10-3-1116 of the Colorado Code, which provide a statutory remedy for unreasonable delay or denial of insurance benefits. St. Paul removed the action to federal court, invoking diversity jurisdiction. Prior to trial, St. Paul moved for summary judgment, but the district court denied the motion. At trial, St. Paul argued Home Loan never had "possession" or "care, custody, or control" of White Hall sufficient to trigger coverage under the policy. St. Paul further maintained that, because its coverage decision was "fairly debatable," it could not have acted unreasonably for purposes of the Colorado statutes.

After Home Loan rested, St. Paul renewed its summary judgment motion and also moved for JMOL on the grounds that: (1) Home Loan had not established it had possession or care, custody, or control of White Hall; (2) Home Loan had not established St. Paul acted unreasonably in denying the claim; and (3) Home Loan's claim under section 10-3-1116 applied only to claims handling, not underwriting activities. The district court denied St. Paul's motions.

5

The jury returned a verdict in favor of Home Loan and against St. Paul on both the common-law breach of contract claim and the statutory claim. Following the verdict, St. Paul moved for JMOL under Rule 50(b) or, alternatively, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. The district court denied both motions. St. Paul now appeals. St. Paul does not challenge the jury's verdict on Home Loan's breach of contract claim. Thus, the only questions before this court concern Home Loan's statutory bad faith claim under Colorado law.

## III.    DISCUSSION

St. Paul raises three arguments on appeal. First, St. Paul asserts the district court erred in denying its motion for JMOL because the denial of Home Loan's claim was reasonable as a matter of law. Alternatively and relatedly, St. Paul contends the district court erroneously instructed the jury on the standard for assessing the reasonableness of St. Paul's denial of Home Loan's claim, thereby warranting a new trial. Second, St. Paul argues sections 10-3-1115 and 10-3-1116 of the Colorado Code provide a remedy only for unreasonable claims-handling activity. And because Home Loan's allegations implicated only St. Paul's underwriting practices, St. Paul claims the district court should have granted JMOL. In the alternative, St. Paul argues it is entitled to a new trial because the overwhelming evidence introduced at trial related to its underwriting practices, not its claims-handling practices. Finally, St. Paul argues the district court erred in calculating the amount of damages recoverable under section 10-3-1116. Specifically, St. Paul asserts that section 1116 entitles plaintiffs to a recovery totaling two times the covered benefit and the district court

6

erroneously awarded Home Loan a total of three times the covered benefit. We address each argument in turn. We then explain why we part from the position advanced by the dissent: that St. Paul is entitled to JMOL because the evidence was insufficient as a matter of law to support a finding that it acted unreasonably in denying Home Loan's claim. Although we agree with the dissent that the resolution of this issue is difficult, we ultimately conclude that St. Paul did not raise in the district court or on appeal a general sufficiency of the evidence argument. As a result, we do not reach this issue.

### A. Issues on Appeal

**1. Under Colorado law, denial of a fairly debatable claim may nonetheless be unreasonable.**

St. Paul's first argument on appeal is that, because its coverage decision was "fairly debatable," it was, as a matter of law, not unreasonable. Specifically, St. Paul argues a claim's fair debatability is outcome determinative because, under Colorado law, an insurer cannot act unreasonably in denying a fairly debatable claim. In response, Home Loan argues that a claim's "fair debatability" is merely one factor in the overall analysis of whether the insurer acted reasonably in delaying or denying coverage.

We review a district court's denial of a Rule 50 motion de novo, applying the same standards as the district court. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013); *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004) (applying de novo review to denial of Rule 50(b) motion). "In a diversity

7

case such as this one, the substantive law of the forum state governs the analysis of the underlying claims . . . ." *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1145 (10th Cir. 2012) (omission in original). "A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011) (brackets and ellipsis omitted). "Drawing all reasonable inferences in favor of the nonmoving party, we thus will reverse the district court's denial of the motion for JMOL if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* at 772 (ellipsis omitted).

Colorado law provides that a "person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). The statute further states, "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing a payment of a covered benefit without a reasonable basis for that action." *Id.* § 1115(2). The parties' dispute centers on whether denial of a fairly debatable claim is per se reasonable under Colorado law.

The Colorado Supreme Court has yet to rule on the issue,[1] but the Colorado Court of Appeals has addressed it on several occasions, not always consistently. For

---

[1] The Colorado Supreme Court recently issued *American Family Mutual Insurance Co. v. Hansen*, __ P.3d __, No. 14SC99, 2016 WL 3398507 (Colo. June 20, 2016). One of the issues before the court was "[w]hether the court of appeals erred in perceiving a factual issue with regard to the reasonableness of the insurer's

8

example, several Colorado Court of Appeals cases have implied, without squarely holding, that a claim's "fair debatability" is sufficient, by itself, to render an insurer's denial of that claim reasonable. *See Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496–97 (Colo. App. 2011); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003); *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 557 (Colo. App. 1998); *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991). In *Zolman*, the Colorado Court of Appeals stated, "Under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" 261 P.3d at 496. Although this language could be read to imply that fair debatability is sufficient—standing alone—to render an insurer's denial of a claim reasonable as a matter of law, subsequent Colorado Court of Appeals decisions have expressly limited the holding in *Zolman*. For example, the court in *Vaccaro v. American Family Insurance Group* stated, "*Zolman* . . . stand[s] for the proposition that a genuine difference of opinion over the value of an insurance claim weighs against a finding of bad faith," but also emphasized that "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law." 275 P.3d 750, 759–60 (Colo. App. 2012); *see also Fisher v. State Farm Mut. Auto. Ins. Co.*, __ P.3d __, No. 13CA2361, 2015 WL 2198515, at *4 (Colo. App. May 7, 2015); *Hansen v. Am. Family Mut. Ins.*

---

initial denial of the insured's claim, despite its assumption that the insurer's coverage position was 'fairly debatable.'" *Id*. ¶ 21 n.3. The Colorado Supreme Court did not ultimately reach this issue, however, because it held that the unambiguous language of the insurance contract provided the insurer with a reasonable basis for denying coverage. *Id*. ¶ 32.

9

*Co.*, __ P.3d __, No. 11CA1430, 2013 WL 6673066, at *6–7 (Colo. App. Dec. 19, 2013), *rev'd on other grounds*, No. 14SC99, 2016 WL 3398507 (Colo. June 20, 2016); *Schuessler v. Wolter*, 310 P.3d 151, 162 (Colo. App. 2012) ("[T]he defense of fair debatability is not a threshold inquiry that is outcome determinative as a matter of law; it is not necessarily sufficient, standing alone, to defeat a bad faith claim.").

Thus, the Colorado Court of Appeals has expressly rejected the argument St. Paul now advances.[2] In the absence of contrary authority from the Colorado Supreme Court, we follow the well-reasoned approach of the Colorado Court of Appeals and hold the district court did not err in denying St. Paul's motion for JMOL on these grounds.

## 2. Sections 10-3-1115 and 10-3-1116 are not limited to claims handling.

St. Paul next argues sections 10-3-1115 and 10-3-1116 provide a remedy for unreasonable conduct only with respect to claims-handling activities. Based on this reading of the statutes, St. Paul argues it was entitled to JMOL because the evidence

---

[2] Because we reject St. Paul's legal argument about fair debatability, we also hold the district court properly instructed the jury as follows:

> In determining whether [St. Paul] acted reasonably in denying Home Loan's claim, you may consider whether [St. Paul's] position on the claim is fairly debatable. If you find that [St. Paul's] position on the claim was fairly debatable, this weighs against a finding that the insurer acted unreasonably. At the same time, just because a position on a claim is fairly debatable, it does not necessarily follow that the insurance company acted reasonably. In other words, you can find that a claim is fairly debatable but that the insurance company still acted unreasonably in denying the claim.

Appellant App. at 804.

at trial related solely to its underwriting practices, not its claims-handling activity. But nothing in the language of either statute supports such a limited application.

The Colorado General Assembly has expressed its intent "to regulate trade practices in the business of insurance by defining, or providing for the determination of, *all such practices* in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined." Colo. Rev. Stat. § 10-3-1101 (emphasis added). Section 10-3-1115 creates a remedy for such unfair practices, providing that "[a] person engaged in the *business of insurance* shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." *Id.* § 10-3-1115(1)(a) (emphasis added). Colorado law defines "insurance" as "a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies, and includes annuities." *Id.* § 10-1-102(12). Colorado further defines "insurer" as "*every person engaged* as principal, indemnitor, surety, or contractor *in the business of making contracts of insurance*." *Id.* § 10-1-102(13) (emphasis added).

The sweeping language of these statutes makes clear Colorado's intent to capture *all* aspects of the insurance relationship and to impose liability for both bad faith breach of the obligation to indemnify—underwriting—and bad faith breach of the obligation to pay a specified or ascertainable amount—claims handling. Under the plain language of section 10-3-1115 and related statutes, a plaintiff may recover whether a claim is unreasonably delayed or denied because the insurer believes the

11

policy should never have been issued or because of some issue related to the claim itself. So long as the jury is convinced the claim was unreasonably delayed or denied, the plain language of section 10-3-1115 provides a remedy. Accordingly, we hold liability under sections 10-3-1115 and 10-3-1116 is not limited to claims-handling conduct.

### 3. The district court properly calculated Home Loan's damages under section 10-3-1116.

St. Paul's final argument on appeal concerns the proper interpretation of section 10-3-1116. The district court awarded Home Loan damages totaling three times the amount of the benefit denied by St. Paul—the covered benefit to which Home Loan was entitled for breach of contract plus a statutory bad faith penalty pursuant to section 10-3-1116 equal to two times the covered benefit. St. Paul argues that a proper interpretation of section 10-3-1116 would entitle Home Loan to recover only its covered benefit plus a penalty equal to that benefit. That is, St. Paul argues Home Loan was limited to a *total* recovery of two times the covered benefit.

Section 10-3-1116 governs the remedies available when an insurer unreasonably delays or denies benefits. *See* Colo. Rev. Stat. § 10-3-1116. It provides:

> A first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs *and two times the covered benefit*.

*Id.* § 10-3-1116(1) (emphasis added). The statute further provides:

> The action authorized in this section is *in addition to*, and does not limit or affect, other actions available by statute or common law, now or in

12

the future. *Damages awarded pursuant to this section shall not be recoverable in any other action or claim.*

*Id.* § 10-3-1116(4) (emphasis added).

The Colorado Supreme Court has not yet ruled on the proper interpretation of section 10-3-1116, but the Colorado Court of Appeals has considered and rejected an argument identical to that advanced by St. Paul. *See Hansen v. Am. Family Mut. Ins. Co.*, __P.3d__, No. 11CA1430, 2013 WL 6673066, at *10–11 (Colo. App. Dec. 19, 2013), *rev'd on other grounds*, No. 14SC99, 2016 WL 3398507 (Colo. June 20, 2016).[3] The *Hansen* court first noted that section 10-3-1116 "expressly creates a private right of action to obtain certain remedies for the unreasonable delay or denial of benefits in violation of section 10-3-1115" and unambiguously provides a remedy for successful plaintiffs of "reasonable attorney fees and court costs and two times the covered benefit." *Id.* at *10 (internal quotation marks omitted). The court then explained that the penalty awarded under section 10-3-1116 arises from a claim separate from the original breach of contract claim—the insurer's *unreasonable delay or denial* of benefits. *See id.* Thus, the court of appeals held the statute provides for an award of a penalty equaling two times the covered benefit *in addition to* a plaintiff's damages awarded in a breach of contract claim. *Id.* at *11.

Although this court is not bound to follow the Colorado Court of Appeals' reasoning, we should do so unless we are convinced that reasoning is incorrect. *See*

---

[3] Because the Colorado Supreme Court held that the insurance policy unambiguously identified the named insured and therefore no statutory bad faith penalty was available, it did not reach this issue in its decision. *Hansen*, 2016 WL 3398507, ¶ 33.

*Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1132 (10th Cir. 2002). Based on the plain language of section 10-3-1116, we are persuaded by the Colorado Court of Appeals' reasoning and therefore affirm the district court's damages calculation.

Section 10-3-1116 provides that a plaintiff whose benefits have been unreasonably delayed or denied can recover "reasonable attorney fees and court costs *and two times the covered benefit*." Colo. Rev. Stat. § 10-3-1116(1) (emphasis added). Subsection (4) unambiguously states that an action to recover statutory bad faith damages under section 10-3-1116 "*is in addition to*, and does not limit or affect, other actions available by statute or common law, now or in the future." *Id.* § 10-3-1116(4) (emphasis added). The plain reading of these two subsections indicates a plaintiff can bring a common law breach of contract claim, recover contract damages, and bring a claim for an insurer's unreasonable delay or denial of benefits *in addition to* the breach of contract claim. That is, the penalty imposed by section 10-3-1116 is in response to an insurer's *unreasonable delay or denial* of a claim, something separate and apart from the damages to which a plaintiff is entitled for a breach of contract. Thus, if the insurer paid the claim but unreasonably delayed doing so, the insured may still bring a claim under section 10-3-1116(1). And the penalty for such unreasonable conduct is specified as "two times the covered benefit." *See id.* § 10-3-1116(1).

Despite this statutory mandate, St. Paul argues Home Loan's damages were limited to a *total* of two times the covered benefit for both its breach-of-contract and section 10-3-1116 claims. Specifically, St. Paul argues the last sentence of subsection

14

(4) contains an "offset clause" that limits the right of plaintiffs to recover in any other claim or action. The last sentence of subsection (4) reads, "Damages awarded pursuant to this section shall not be recoverable in any other action or claim." Colo. Rev. Stat. § 10-3-1116(4). St. Paul argues that "it is clear that while the first sentence of § 10-3-1116(4) does not prohibit multiple *actions* for the covered benefit from being brought, the second sentence prohibits multiple recoveries of the same 'covered benefit' as *damages*." That is, St. Paul argues Home Loan could not recover its covered benefit in its breach of contract claim *in addition to* the damages authorized by section 10-3-1116.

But St. Paul's reading is contrary to the plain language of the statute because it ignores subsection (4)'s focus on damages "*awarded pursuant to this section*." *Id.* (emphasis added). Home Loan's recovery of the benefit owed was not awarded pursuant to section 10-3-1116; it was awarded pursuant to Home Loan's common law claim for breach of contract. The damages awarded pursuant to section 10-3-1116 were a penalty for the insurer's *unreasonable* delay or denial of that benefit. The second sentence of subsection (4) can be read to bar double recovery in a common law bad faith or other tort claim if the plaintiff has already recovered pursuant to section 10-3-1116. But the damages awarded pursuant to section 10-3-1116 are not coextensive with the contract damages awarded under a common law breach of contract claim. Accordingly, we affirm the district court's award of damages under section 10-3-1116.

15

In summary, we agree with the district court that an insurer may act unreasonably even when a claim is fairly debatable. Therefore, we affirm the district court's denial of St. Paul's motion for JMOL and its denial of St. Paul's motion for a new trial based on its challenge to the jury instruction on this issue. We also hold that liability under sections 10-3-1115 and 10-3-1116 is not limited to claims-handling activity, and therefore the district court properly denied St. Paul's motion for JMOL on this ground. Finally, we hold that the district court properly calculated Home Loan's damages by awarding it the amount of the insurance benefit owed on the breach of contract claim and an additional two times that benefit under section 10-3-1116.

## B. Issues Raised by the Dissent

The dissent would not reach these issues. Instead, the dissent would conclude St. Paul is entitled to judgment as a matter of law on Home Loan's claims because the evidence at trial could not support a finding that St. Paul acted unreasonably in denying Home Loan insurance coverage for White Hall. Because our reading of the record convinces us St. Paul neither preserved a sufficiency-of-the-evidence challenge before the district court nor argued sufficiency of the evidence before this court on appeal, we respectfully disagree.

### 1. St. Paul did not properly preserve a sufficiency-of-the-evidence challenge before the district court.

"Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two

16

stages for such challenges—prior to submission of the case to the jury, and after the

verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546

U.S. 394, 399 (2006). Rule 50(a) allows a party to challenge the sufficiency of the

evidence prior to submitting the case to the jury.[4] *See* Fed. R. Civ. P. 50(a);

*Unitherm*, 546 U.S. at 399. But if the court does not grant a party's Rule 50(a)

motion, "Rule 50(b) . . . sets forth the procedural requirements for renewing a

sufficiency of the evidence challenge after the jury verdict and entry of judgment."[5]

*Unitherm*, 546 U.S. at 400.

---

[4] Rule 50(a) states:
**(a) Judgment as a Matter of Law.**
> **(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>> **(A)** resolve the issue against the party; and
>> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

[5] Rule 50(b) states:
**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may

17

The Supreme Court has instructed that compliance with the requirements of Rule 50 is mandatory.[6] *Id.* at 404 ("[F]ailure to comply with [Rule 50] forecloses [a party's] challenge to the sufficiency of the evidence . . . ."). Indeed, the Court has suggested on several occasions that federal appellate courts lack the power to set aside a verdict on sufficiency of the evidence grounds, absent a Rule 50-compliant challenge before the district court. *See, e.g.*, *id.* at 405 (noting that courts of appeals are "powerless" to grant relief absent a properly filed Rule 50(b) motion); *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011) ("Absent [a Rule 50(b)] motion, we have repeatedly held, an appellate court is 'powerless' to review the sufficiency of the evidence after trial." (internal quotation marks omitted)); *Johnson v. New York, N.H., & H.R. Co.*, 344 U.S. 48, 50 (1952) ("[I]n the absence of a [Rule 50(b) motion] made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment."); *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947) ("In the absence of [a Rule 50(b)] motion, we think

---

include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> **(1)** allow judgment on the verdict, if the jury returned a verdict;
> **(2)** order a new trial; or
> **(3)** direct the entry of judgment as a matter of law.

[6] The dissent suggests we can ignore St. Paul's failure to comply with the requirements of Rule 50 because "there are many mandatory requirements that have been considered 'waived' or 'forfeited.'" Although we sometimes exercise our discretion to forgive a party's failure to comply with otherwise mandatory requirements, we are aware of no cases where we have entertained a sufficiency-of-the-evidence claim on appeal despite the party's failure to comply with Rule 50. Indeed, the Supreme Court's jurisprudence we discuss in the text here suggests a more rigid application of Rule 50.

18

the appellate court was without power to direct the District Court to enter judgment contrary to the one it had permitted to stand."); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 817 n.15 (10th Cir. 2008) (discussing, but not deciding, whether a party's failure to file a proper Rule 50(b) motion deprives the appellate courts of jurisdiction to entertain a sufficiency-of-the-evidence challenge). Moreover, this court has held that a party may only pursue a ground for relief in a postverdict Rule 50(b) motion if that same ground for relief was first asserted in a preverdict Rule 50(a) motion. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1219 (10th Cir. 2013) ("[T]he precise subject matter of a party's Rule 50(a) motion . . . cannot be appealed unless that motion is renewed pursuant to Rule 50(b)." (alteration in original)); *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir. 2007) ("The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original [Rule 50(a)] motion."). Thus, for this court to entertain a sufficiency-of-the-evidence challenge, St. Paul must have properly presented such a challenge to the district court first in a preverdict Rule 50(a) motion and then in a renewed Rule 50(b) motion following the verdict.[7]

St. Paul filed a Rule 50(a) motion at the close of Home Loan's case in chief. In that motion, St. Paul did raise a challenge to the sufficiency of the evidence, arguing, "No Reasonable Jury Could Find That [St. Paul] Denied Home Loan's Claim Without

---

[7] In addition, St. Paul must have raised the sufficiency-of-the-evidence challenge in its opening brief to this court. *See United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015). We address St. Paul's failure to do so later in this opinion. *See infra* Part III.B.2.

19

a Reasonable Basis." But at the hearing on St. Paul's mid-trial Rule 50(a) motion, St. Paul advanced a new argument. St. Paul argued the jury should be precluded from considering evidence of its underwriting practices when determining whether it could be held liable under sections 10-3-1115 and 10-3-1116. Under St. Paul's reading of the statutes, a claim for bad faith denial of benefits can be predicated only on an insurer's claims-handling behavior and, therefore, evidence about an insurer's underwriting practices is irrelevant to a statutory bad faith claim under Colorado law. The district court construed this argument not as a challenge to the sufficiency of the evidence, but as a request to limit the scope of the evidence the jury could consider. As such, the district court understood St. Paul to be advancing an argument distinct from a sufficiency-of the-evidence challenge.

Following trial, St. Paul again moved for JMOL under Rule 50(b). This postverdict motion focused entirely on St. Paul's new argument concerning the scope of the statutory claim for bad faith.[8] That is, St. Paul moved for postverdict JMOL "on Home Loan's statutory claim under § 10-3-1116(1) because an analysis of the cause of action created by the Colorado General Assembly in §§ 10-3-1115 and 10-3-1116, including the statutory language, the legislative scheme, and the case law

_____

[8] Based on this court's precedent in *Marshall v. Columbia Lea Regional Hospital*, it may be that this new argument—raised for the first time at the hearing on St. Paul's Rule 50(a) motion—was not properly before the district court for purposes of a postverdict Rule 50(b) motion. *See* 474 F.3d 733, 738–39 (10th Cir. 2007) ("The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original [Rule 50(a)] motion."). But because resolution of this issue would not change the outcome of our analysis, we need not decide whether an argument not raised in the Rule 50(a) motion, but asserted at the Rule 50(a) hearing, is properly preserved for a later Rule 50(b) motion.

construing it, confirms that § 10-3-1116(1) provides a remedy solely for unreasonable conduct in the handling of claims, not for underwriting practices or conduct." And because, in St. Paul's view, the evidence at trial related solely to its underwriting practices—and not its claims-handling conduct—it was entitled to JMOL.

But as the district court recognized, this argument is separate and distinct from a sufficiency-of-the-evidence challenge. Indeed, St. Paul never argued there was an insufficient evidentiary basis for the jury's verdict, taking the evidence introduced at trial as a whole. Rather, St. Paul advanced a *legal* argument relating to the scope of liability imposed by the Colorado General Assembly in sections 10-3-1115 and 10-3-1116. Specifically, St. Paul argued that—*if* the district court disregarded evidence St. Paul characterized as relating to its underwriting practices—there was no evidence to support a finding that it unreasonably denied Home Loan's claim. But St. Paul's argument required the district court to accept both its characterization of the evidence as pertaining solely to underwriting and its legal theory that liability under sections 10-3-1115 and 10-3-1116 could be premised only on evidence of an insurer's claims-handling practices. Notably, St. Paul did *not* argue that Home Loan failed to produce sufficient evidence of St. Paul's unreasonable denial of benefits *regardless* of whether the district court accepted St. Paul's statutory argument.

The dissent asserts that St. Paul's legal argument relating to the scope of liability under sections 10-3-1115 and 10-3-1116 was premised on "St. Paul's larger point . . . that its justifications for denying the claim could not be regarded as

21

unreasonable under the Colorado statutes." Respectfully, we disagree. St. Paul's postverdict Rule 50(b) motion conceded that Home Loan introduced evidence of what St. Paul characterized as "underwriting practices" during trial. Far from contending that no evidence of unreasonable conduct was introduced, St. Paul's postverdict Rule 50(b) motion tried to discount that evidence based on a distinction between evidence of claims-handling practices and underwriting practices. As discussed, under St. Paul's erroneous legal theory, sections 10-3-1115 and 10-3-1116 apply only to claims-handling conduct. *See supra* Part III.A.2. Indeed, St. Paul conceded Home Loan had introduced evidence at trial relevant to whether St. Paul had acted unreasonably,[9] but St. Paul argued that evidence was relevant only to its underwriting activity, not its claims-handling activity. Accordingly, St. Paul never argued the evidence, if deemed relevant, was insufficient to support a finding that it unreasonably delayed or denied payment of Home Loan's claim.[10]

---

[9] For example, Home Loan argued it was unreasonable for St. Paul to deny coverage on the grounds that Home Loan had provided no evidence that it had care, custody, and control over the property. In support, Home Loan introduced evidence that Home Loan: (1) purchased insurance on the property, (2) paid the utilities on the property, (3) could access the property at any time, (4) was involved in efforts to sell the property, and (5) was involved in efforts to avoid foreclosure on the property. According to Home Loan, St. Paul learned of these facts during the claims investigation, but nevertheless unreasonably denied coverage. The jury apparently agreed; the dissent does not. St. Paul acknowledged this evidence was presented to the jury but characterized it as postclaim underwriting practices and therefore irrelevant to a claim of statutory bad faith under sections10-3-1115 and 10-3-1116.

[10] The dissent also argues Home Loan has conceded that St. Paul raised a sufficiency-of-the-evidence claim. Again we respectfully disagree. The dissent points to Home Loan's characterization of St. Paul's JMOL argument as whether "the reasonableness of [St. Paul's] conduct was properly a jury issue." But that

22

The dissent also asserts Home Loan waived any possible objection to St. Paul's failure to comply with the requirements of Rule 50 because Home Loan did not argue in its response brief to this court that St. Paul failed to preserve its sufficiency-of-the-evidence claim before the district court. But as explained below, in addition to not preserving a sufficiency-of-the-evidence claim before the district court, St. Paul *also* waived any such claim on appeal by failing to argue sufficiency of the evidence in its opening brief. *See infra* Part II. Rule 28 requires appellants to identify in their opening brief the issues and arguments they wish to raise on appeal. *See* Fed. R. App. P. 28(a)(8). And "[t]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). This rule makes sense.

We do not require appellees to affirmatively object to all arguments appellants *fail* to raise in their opening briefs. To do so would unfairly place the burden on appellees to anticipate which arguments, not advanced in the district court or in an appellant's opening brief, the appellant might choose to raise for the first time in a

characterization and Home Loan's reference to St. Paul's claim at oral argument as an argument that the section 10-3-1116 claim "never should have gone to the jury," accurately, albeit succinctly, reflect St. Paul's legal argument. That is, St. Paul advanced a legal theory that the Colorado statutes govern only claims-investigation and payment activity and argued the evidence presented reflected only underwriting activity and therefore the evidence could not support a statutory violation. As made apparent by the thoughtful dissent, reasonable minds can disagree on this issue. But we are not convinced St. Paul argued there was insufficient evidence to support a statutory claim, even considering the evidence St. Paul characterizes as underwriting activity. Nor are we persuaded that Home Loan conceded the issue of preservation on this claim.

reply brief. *See WildEarth Guardians v. EPA*, 759 F.3d 1196, 1204 (10th Cir. 2014) (recognizing that inadequately raised arguments fail to place opposing counsel on notice); *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1159 n.8 (10th Cir. 2013) (declining to address argument not raised in opening brief because opposing party was deprived of opportunity to respond). Here, St. Paul abandoned its sufficiency-of-the-evidence claim in the district court and did *not* raise such a challenge on appeal. *See infra* Part III.B.2. Home Loan therefore had no reason to raise a failure of preservation objection to our consideration of the argument on appeal. Although an appellee can waive a nonpreservation argument by failing to object to an argument that is raised for the first time on appeal, we do not place on appellees the burden of anticipating which unpreserved arguments the appellants—or in this case the appellate court—might consider despite not having been raised at all. Because St. Paul compounded its failure to preserve a sufficiency-of-the-evidence claim in the district court by failing to raise such a claim in its opening brief, Home Loan was under no obligation to object on preservation grounds.[11]

---

[11] The cases on which the dissent relies to support its conclusion that Home Loan waived any objection to St. Paul's failure to preserve a sufficiency-of-the-evidence claim in the district court are easily distinguishable. In each of those cases, the appellant raised on appeal an argument not presented to the district court, but the opposing party failed to object on preservation grounds. *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1138–39 (10th Cir. 2010); *United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006). Here, St. Paul did *not* raise a sufficiency-of-the-evidence challenge on appeal. *See infra* Part III.B.2. Absent some argument in St. Paul's opening brief on appeal, Home Loan had no obligation to object on preservation grounds.

24

In summary, St. Paul's postverdict Rule 50(b) motion advanced a legal argument distinct from the sufficiency-of-the-evidence claim raised in its preverdict Rule 50(a) motion. And under both Supreme Court and Tenth Circuit precedent, a failure to renew a sufficiency-of–the-evidence claim in a postverdict Rule 50(b) motion deprives the appellate court of power to review the sufficiency of the evidence at trial. Accordingly, we hold that St. Paul failed to adequately preserve a sufficiency-of-the-evidence challenge before the district court. We therefore lack the power to review the sufficiency of the evidence at this juncture. But even if we were convinced St. Paul had properly preserved a sufficiency challenge in the district court, we would nevertheless hold St. Paul had waived any sufficiency challenge by not bringing it on appeal.

**2. St. Paul failed to argue sufficiency of the evidence on appeal.**

We also respectfully depart from the dissent's conclusion that St. Paul raised a sufficiency-of-the-evidence challenge on appeal. Instead, our review of the briefs to this court and counsel's statements at oral argument convince us St. Paul did not advance such an argument in this court. Accordingly, any argument that the evidence was insufficient to support the verdict is waived. *See United States v. Fisher*, 805 F.3d 982, 991(10th Cir. 2015) (noting that "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief").

In its opening brief to this court, St. Paul raised three issues. First, St. Paul argued that because its coverage position was "fairly debatable," its decision to deny

Home Loan's claim was reasonable as a matter of law. Specifically, St. Paul advanced the *legal* argument that under Colorado law an insurer acts reasonably as a matter of law when it denies a "fairly debatable" claim. And based on this legal position, St. Paul argued that coverage was "fairly debatable" and therefore its denial was "reasonable as a matter of law." This is not a sufficiency-of-the-evidence argument. Instead, St. Paul advanced the legal theory that "fair debatability" was sufficient—standing alone—to render the denial of a claim for benefits reasonable under Colorado law. Nowhere in its opening brief does St. Paul argue that, even if fair debatability is only a factor in the reasonableness analysis, the evidence is insufficient to support a finding that it acted unreasonably in denying or delaying the payment of Home Loan's claim. Accordingly, St. Paul did not advance a sufficiency-of-the-evidence challenge on appeal.

Second, St. Paul reasserted the argument made in its postverdict Rule 50(b) motion that sections 10-3-1115 and 10-3-1116 provide a remedy for unreasonable conduct in claims handling only and the evidence at trial related solely to St. Paul's underwriting practices. As discussed, this is a *legal* argument about the scope of two Colorado statutes. And St. Paul did not argue that even if we disagree with its reading of sections 10-3-1115 and 10-3-1116, there was nevertheless insufficient evidence for the jury to conclude St. Paul acted unreasonably. As such, this argument is also not a sufficiency challenge.

Finally, St. Paul argues the district court improperly calculated the amount of damages recoverable for a bad faith denial of insurance benefits under

26

section 10-3-1116. This argument is, of course, not a sufficiency-of-the-evidence claim. Thus, St. Paul did not raise a sufficiency challenge in its briefing to this court.

Moreover, at oral argument, counsel for St. Paul stated, "This case presents three questions on appeal." Counsel went on to state, "The first question is whether . . . if a claim is fairly debatable is that a complete defense to a statutory bad faith claim? The second issue is whether underwriting can form a basis for a statutory violation under [Colorado law]. . . . The third issue is whether the double damages provision within the Colorado statute means just that, whether there is a double damages as opposed to a treble damages, or triple damages, multiplier in that penalty statute." Counsel's recitation of the issues at oral argument, therefore, tracks the issues as presented in St. Paul's appellate briefs. And at no point during oral argument did counsel for St. Paul indicate the insurer was pursuing a sufficiency-of-the-evidence claim.

The dissent views this issue otherwise and concludes St. Paul is entitled to judgment as a matter of law because no reasonable jury could find the insurer acted unreasonably based on the evidence at trial.[12] We respectfully disagree and hold St. Paul did not make a sufficiency-of-the-evidence argument.

---

[12] The dissent also suggests that, because a motion for judgment as a matter of law under Rule 50 is, by definition, a challenge to the sufficiency of the evidence at trial, St. Paul must have intended to bring a sufficiency-of-the-evidence challenge. Although a Rule 50 motion properly challenges only sufficiency of the evidence, *see Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841 (10th Cir. 1994) ("These motions thus challenge the sufficiency of the evidence rather than the correctness of questions of law."), a party's failure to properly characterize the relief it seeks does not control our review. That is, "we look beyond the form of the motion to the substance of the

## IV. CONCLUSION

For the reasons discussed, we affirm the district court on all issues.

---

relief requested." *See Yost v. Stout*, 607 F.3d 1239, 1243 (10th Cir. 2010) (internal quotation marks omitted). St. Paul's postverdict motion relied on both Rule 50 and Rule 59. Although the legal theories St. Paul now advances might be inappropriate for resolution under Rule 50, they would have been proper grounds for a new trial under Rule 59. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2805 ("Any error of law, if prejudicial, is a good ground for a new trial.") (3d ed. 2015). Accordingly, we do not view the fact that St. Paul styled its motion as a Rule 50 motion or that it continues to seek JMOL as controlling. Instead, looking to the substance of St. Paul's motion, we conclude St. Paul did not raise a sufficiency-of-the-evidence claim.

*The Home Loan Investment Co. v. The St. Paul Mercury Insurance Co.*,
Case No. 15-1018

**BACHARACH**, J., dissenting.

This appeal grew out of a dispute between a mortgagee (Home Loan Investment Company) and its insurer (St. Paul Mercury Insurance Company) over the terms of an insurance policy. The policy insured Home Loan for damage to real property if Home Loan was considered a "mortgagee in possession." To qualify as a mortgagee in possession, Home Loan had to have possession, care, custody, or control of the property.

The property was damaged, and Home Loan submitted an insurance claim. After investigating, St. Paul denied the claim on the ground that Home Loan had not obtained possession, care, custody, or control: In St. Paul's view, the property remained in the hands of the mortgagor. Home Loan disagreed and sued under Colorado statutes, Colo. Rev. Stat. §§ 10-3-1115, -1116 (LEXIS through First Reg. Sess. of 70th Gen. Assembly, 2015), which prohibit insurers from unreasonably handling a claim.

At trial, St. Paul argued that it was entitled to judgment as a matter of law because Home Loan had not presented evidence of claims-handling practices that might be considered unreasonable. The district court rejected this argument and submitted Home Loan's statutory claim to the jury. The jury found that St. Paul had acted unreasonably, and the district court awarded judgment to Home Loan on its statutory claim. In my view, we

should reverse because St. Paul's handling of the claim was reasonable as a matter of law.

**1.   St. Paul has raised a sufficiency of the evidence argument on appeal.**

The majority concludes that St. Paul has not challenged the sufficiency of the evidence regarding unreasonable conduct in handling the claim. I respectfully disagree with this conclusion.

I do, however, appreciate the difficulty in determining whether St. Paul has challenged the sufficiency of the evidence. If one looks solely at the headings in its opening brief, St. Paul appears to make three arguments: (1) St. Paul's denial of Home Loan's claim was reasonable as a matter of law because coverage was at least fairly debatable, (2) the Colorado statutes do not apply to the underwriting process, and (3) the district court erred in awarding three times the covered benefits rather than twice the covered benefits. In oral argument, St. Paul again explained that these were the three issues presented on appeal.

Based on this framing of the issues in St. Paul's opening brief and in oral argument, the majority concludes that St. Paul raises only legal arguments and does not challenge the sufficiency of the evidence on the reasonableness of St. Paul's claims-handling conduct. In my view, however, the majority overlooks how St. Paul goes about making its first

2

and second arguments (that the claim denial was reasonable as a matter of law and that the statutes do not apply to the underwriting process).

St. Paul argues that the district court erred in failing to grant its motion for judgment as a matter of law. In its opening brief, St. Paul asks us five times to remand with instructions to grant its motion for judgment as a matter of law. St. Paul's Opening Br. at 14, 22, 34, 38, 54. By definition, a motion for judgment as a matter of law is appropriate only when the evidence is insufficient for an adverse judgment. *See* 9B Arthur R. Miller, Federal Practice and Procedure § 2531 Standard Distinguished from Other Procedures—New Trial (3d ed. 2015).

The majority and I agree that St. Paul is arguing that the district court should have granted the motion for judgment as a matter of law. But the majority and I disagree on St. Paul's underlying rationale for this argument. The majority characterizes St. Paul's rationale as a legal argument. Though I agree that St. Paul frames part of its argument as a legal one involving the scope of the Colorado statutes, I believe that St. Paul has also challenged the sufficiency of the evidence. St. Paul had to do that to obtain the relief it requested: judgment as a matter of law.

St. Paul understood sections 10-3-1115 and 10-3-1116 to penalize unreasonable conduct at the claims-handling stage. After all, St. Paul's heading II(C) states: "Section 10-3-1116(1) provides a remedy only for unreasonable claims handling, not underwriting." St. Paul's Opening Br. at

3

27. St. Paul's brief then goes on to argue that Home Loan introduced no evidence of unreasonable claims handling. *See, e.g., id.* at 35, 38 (noting an "absence of evidence of any claims handling conduct that could be considered unreasonable" and stating that "[Home Loan] introduced no evidence of claims handling conduct that a reasonable jury could find was unreasonable").

To that end, St. Paul challenges Home Loan's argument that St. Paul unreasonably concocted excuses to deny the claim. St. Paul argues that the alleged excuses actually involved underwriting rather than claims handling. *See id.* at 26 ("Although the district court characterized [St. Paul's] investigation of the claim and 'its post-hoc justifications for denying payment' as claims-handling practices, these activities actually involved underwriting, since they pertained to whether the policy was properly issued in the first place." (quoting St. Paul's App'x vol. IV, at 995)). St. Paul then argues that sections 10-3-1115 and 10-3-1116 apply only to an insurer's conduct in handling claims, not in underwriting. Thus, St. Paul is arguing that there was no evidence of unreasonable conduct at the *claims-handling* stage, as required under St. Paul's reading of sections 10-3-1115 and 10-3-1116.

Even if we adopt the majority's characterization of this argument as a legal argument involving statutory interpretation, the effect is the same: St. Paul is arguing that Home Loan could not obtain a favorable judgment

4

because there was no evidence of unreasonable conduct in St. Paul's handling of the claim.

St. Paul's overarching contention is that because the alleged excuses to deny Home Loan's claim do not qualify as unreasonable conduct under sections 10-3-1115 and 10-3-1116, the evidence could not establish a statutory violation. To decide the appeal, we should address this overarching contention by deciding whether a rational jury could find unreasonable conduct at the claims-handling stage.

In my view, St. Paul has challenged the sufficiency of the evidence by arguing the absence of unreasonable claims-handling evidence. On this challenge, St. Paul's headings and underlying argument are clear. St. Paul repeatedly argues that (1) it was entitled to judgment as a matter of law and (2) Home Loan did not present evidence of unreasonable conduct at the claims-handling stage. I would decide the sufficiency of the evidence because it is bound up with St. Paul's statutory-interpretation argument involving the applicability of sections 10-3-1115 and 10-3-1116 to underwriting conduct.

**2.      In district court, St. Paul properly preserved its challenge to the sufficiency of the evidence.**

The majority also concludes that St. Paul did not preserve its sufficiency of the evidence challenge in district court. In my view, St. Paul

5

preserved this challenge in district court and Home Loan has waived any possible forfeiture.

In district court, St. Paul moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). There St. Paul argued that a reasonable jury could not find that St. Paul had an unreasonable basis for denying Home Loan's claim. St. Paul's App'x vol. III, at 760-65.

After the verdict was announced, St. Paul renewed its motion for judgment as a matter of law under Rule 50(b). In this motion, St. Paul urged judgment as a matter of law, in part "[b]ecause Home Loan's statutory claim was not based on claims handling conduct, *and* because Home Loan [had] introduced no evidence of claims handling conduct that a reasonable jury could find was unreasonable." *Id.* vol. IV, at 930 (emphasis added).

The majority points to St. Paul's separate argument regarding the scope of sections 10-3-1115 and 10-3-1116, which contends that the statutes address unreasonable claims-handling conduct rather than conduct at the underwriting stage. As the majority correctly explains, this is a legal argument. But as discussed above, St. Paul's larger point was that its justifications for denying the claim could not be regarded as unreasonable under the Colorado statutes.

Home Loan apparently interprets St. Paul's argument as I do, for Home Loan concedes that St. Paul preserved the issue involving whether

6

"the reasonableness of [St. Paul's] conduct was properly a jury issue." Home Loan's Response Br. at 15; *see also* Oral Arg. at 18:15-30 (Home Loan interpreting St. Paul's first appeal point as an argument that the denial of St. Paul's post-judgment motion constituted error and that the statutory bad-faith claim "never should have gone to the jury").

The majority concludes that Home Loan is referring to a different argument. This conclusion rests on the majority's view that St. Paul was not and is not challenging the sufficiency of evidence of unreasonable claims-handling conduct. I respectfully disagree: St. Paul argued in district court and argues on appeal that it is entitled to judgment as a matter of law and that only St. Paul's claims-handling conduct (as opposed to the underwriting conduct) is subject to the statutory penalty.

Home Loan characterizes this issue as whether "the reasonableness of [St. Paul's] conduct was properly a jury issue" and concedes that "this issue was preserved." Home Loan's Response Br. at 15. In light of this concession, Home Loan has waived any possible forfeiture argument regarding St. Paul's appellate challenge. *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1138-39 (10th Cir. 2010) (explaining that the plaintiffs forfeited any nonpreservation argument they might have had by failing to raise a nonpreservation argument); *see also United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) (concluding that the government

7

"waived the waiver" by failing to argue that the defendant had forfeited his appeal point).[1]

**3.    We should engage in de novo review, viewing the evidence in the light most favorable to Home Loan.**

If we were to address the merits of St. Paul's argument, we would engage in de novo review, applying the same standard as the district court. *Myklatun v. Flotek Indus., Inc.*, 734 F.3d 1230, 1233-34 (10th Cir. 2013). This standard requires us to determine whether the jury could have relied on the evidence and rendered a verdict for Home Loan, and we view the evidence and related inferences in the light most favorable to the verdict. *Id.* at 1234. Judgment as a matter of law was required only if "the proof [was] all one way or so overwhelmingly preponderant in favor of [St. Paul] as to permit no other rational conclusion." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

---

[1]    The majority states that compliance with Rule 50 is mandatory. But the mandatory nature of Rule 50 does not affect whether Home Loan has waived a potential argument on forfeiture:

> [T]he mandatory nature of the duty goes to the merits; it doesn't help us determine how to exercise our discretion. After all, there are many mandatory requirements that have been considered "waived" or "forfeited."

*United States v. Rodebaugh*, 798 F.3d 1281, 1316 (10th Cir. 2015); *see also United States v. Williamson*, 53 F.3d 1500, 1527 (10th Cir. 1995) (applying the plain-error standard because the defendant failed to object in district court even if the court had violated the "mandatory requirements" of Federal Rule of Criminal Procedure 32(c)(3)(D)).

8

**4.**   **After the property was damaged in a fire, Home Loan submitted an insurance claim as the mortgagee in possession.**

This insurance dispute involves a building in Colorado known as White Hall. White Hall was owned by a limited liability company controlled solely by Ms. Rosemarie Glas. To buy White Hall, Ms. Glas's company obtained financing from Home Loan, which in turn obtained a security interest in the property.

Ms. Glas's company began experiencing financial difficulties and stopped making payments on the loan, utilities, and insurance. Home Loan stepped in to pay the utility bills and asked its insurance carrier, St. Paul, to provide insurance coverage for Home Loan's remaining interest in the loan. St. Paul accepted and added White Hall to Home Loan's existing policy for insurance as a foreclosed property.

White Hall was later damaged in a fire, and Home Loan submitted a claim to St. Paul. St. Paul investigated for two months, ultimately denying the claim on the ground that Home Loan was not a mortgagee in possession when the fire broke out. In St. Paul's view, White Hall remained in the sole possession and control of Ms. Glas's company even though it had stopped paying its bills.

9

Home Loan sued under Colorado law,[2] which provides: "A person engaged in the business of insurance shall not unreasonably . . . deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Section 10-3-1115(1)(a) (LEXIS). Under this law, "an insurer's . . . denial was unreasonable if the insurer . . . denied authorizing payment of a covered benefit without a reasonable basis for that action." Section 10-3-1115(2) (LEXIS). Therefore, I focus on the reasonableness of St. Paul's investigation and decision to deny Home Loan's claim.

The policy insured Home Loan for properties that it had foreclosed. Under the policy, White Hall would be considered foreclosed only if Home Loan had already gained ownership or possession by

- enforcing its security interest in a foreclosure proceeding,

- acquiring a deed in lieu of foreclosure, or

- obtaining status as a "mortgagee in possession."

St. Paul's App'x vol. XV, at 2413. The policy defines "mortgagee in possession" as "a mortgagee of a building or structure who is in possession of it or who has assumed the care, custody, or control of such building or structure on behalf of the mortgagor with the agreement or assent of the mortgagor." *Id.*

---

[2]    Because this is a diversity action and Colorado is the forum state, we should apply Colorado substantive law. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

10

Home Loan insists that it was a mortgagee in possession because it had care, custody, or control of White Hall. St. Paul disagrees. In this appeal, however, we need not decide which party is correct. Instead, we need to decide only whether a jury could legitimately regard St. Paul's claims decision or its investigation as unreasonable. I would conclude that St. Paul's decision and investigation were reasonable as a matter of law.

**5. The claim does not involve deficiencies in underwriting.**

As a preliminary matter, the parties disagree on the relevance of underwriting conduct to the statutory claim: Home Loan regards underwriting as relevant and St. Paul takes the opposite view. The parties differ in how they frame this disagreement.

St. Paul contends that because the Colorado statutes are limited to claims handling, the fact finder cannot consider evidence of underwriting conduct. In St. Paul's view, the fact finder may consider an insurer's conduct after the claim is filed, but not before. In addition, St. Paul suggests that some of its conduct constituted post-claim underwriting, which should be excluded from the fact finder's consideration.

Home Loan takes a different view, contending that St. Paul's underwriting conduct bears on the issue of reasonableness. In Home Loan's view, the jury can consider underwriting events that preceded and postdated the claim's filing. And, Home Loan contends, the practice of post-claim underwriting is unreasonable under the Colorado statutes.

11

These arguments turn on a single issue: Do the Colorado statutes apply to underwriting conduct? We need not answer this question if we decide the appeal based on the insufficiency of the evidence. The applicability of the statutes to underwriting is immaterial because Home Loan is not complaining about St. Paul's pre-claim underwriting; instead, Home Loan is complaining about St. Paul's post-claim investigation and denial. Even if some of that conduct is characterized as post-claim underwriting, the entirety of St. Paul's post-claim conduct was reasonable as a matter of law.

**6.      St. Paul's denial of the claim was reasonable as a matter of law.**

In my view, the evidence would have compelled the jury to regard St. Paul's denial of the claim as reasonable.

Under Colorado law, the denial of Home Loan's insurance claim would have been unreasonable only if St. Paul lacked a reasonable basis for the denial.[3] Section 10-3-1115(2) (LEXIS). "The only . . . issue in the

---

[3]      Under Colorado common law, insurers bear an implied duty of good faith and fair dealing. *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141-42 (Colo. 1984). To enforce this duty, insureds in Colorado can sue the insurer under the common law. In that setting, the Colorado Supreme Court has held that an insurer "may challenge claims which are fairly debatable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)).

St. Paul argues that this standard ("fair debatability") applies not only in suits brought under the common law, but also in suits brought under the statutes (sections 10-3-1115 and 10-3-1116). We need not decide whether St. Paul is correct because it would be entitled to judgment as a

12

statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012). The reasonableness of an insurer's conduct in denying a claim is evaluated objectively under industry standards. *Fisher v. State Farm Mut. Auto. Ins. Co.*, __ P.3d __, No. 13CA2361, 2015 WL 2198515, at *9 (Colo. App. May 7, 2015). Reasonableness ordinarily involves a question of fact; but in the absence of a genuine issue of material fact, "reasonableness may be decided as a matter of law." *Vaccaro*, 275 P.3d at 759.

Even if the jury were to credit all of Home Loan's evidence, three undisputed facts would have allowed St. Paul to reasonably conclude that White Hall remained in Ms. Glas's sole possession, care, custody, and control:

1.   Home Loan never possessed keys to White Hall; thus, to open the property, Home Loan had to contact Ms. Glas or her real estate agent.

2.   When asked by St. Paul, Home Loan represented that it was Ms. Glas who had "possession of property or care, custody or control of property." St. Paul's App'x vol. V, at 1183.

3.   Ms. Glas maintained the property, listed it for sale, and signed a search warrant (after the fire) as the "owner/occupant and in possession of" White Hall. *Id.* at 1094; *id.* vol. X, at 1826.

Home Loan argues that it had possession, care, custody, or control of White Hall by

---

matter of law regardless of the applicability of a "fair debatability" standard.

13

- paying Ms. Glas's utility and insurance bills and

- participating in efforts to sell the property.

But even if a jury agreed, it could not legitimately characterize St. Paul's contrary conclusion as unreasonable.

Though Home Loan paid some of Ms. Glas's bills, the evidence was undisputed that

- Ms. Glas had intended to repay Home Loan,

- the utilities had remained in Ms. Glas's name, and

- Home Loan had insured only its loan interest in the property.

Thus, St. Paul's claims decision would have been reasonable even if the jury had considered Home Loan's financial help to Ms. Glas's company. That help did not preclude a reasonable insurer from concluding that Ms. Glas's company had retained possession, care, custody, and control.

Home Loan points to testimony that

- Ms. Glas updated Home Loan regarding efforts to sell White Hall,

- Home Loan inspected White Hall, and

- Home Loan asked the county tax assessor about reducing the taxes for White Hall.

With this evidence, the jury also heard undisputed testimony that

- Home Loan had not affirmatively assisted Ms. Glas in trying to sell the property and

- Home Loan could not even go into White Hall without contacting Ms. Glas or her realtor.

When viewing the totality of this evidence, the jury could conclude that Home Loan was trying to protect its security interest in White Hall. But to obtain insurance benefits, Home Loan had to do more than protect its security interest: Home Loan had to succeed in obtaining possession, care, custody, or control.

For the sake of argument, we can assume that the jury might have regarded Home Loan's help to Ms. Glas's company as proof of Home Loan's possession, care, custody, or control. But could a jury go further and regard St. Paul's decision to the contrary as unreasonable? I do not think so. Home Loan represented to St. Paul that Ms. Glas was still the party with "possession of property or care, custody, or control." *Id.*, vol. V, at 1183. In addition to that representation, St. Paul knew that Home Loan didn't even have keys to White Hall and could not go into the property without asking Ms. Glas or her realtor. And St. Paul knew that it was Ms. Glas—not Home Loan—that maintained the property, listed it for sale, and signed as the person or entity that owned and possessed White Hall. In the face of that evidence, any rational jury would conclude that St. Paul acted reasonably in determining that Home Loan had not yet obtained possession, care, custody, or control of White Hall.

15

**7. The jury could not justifiably regard St. Paul's investigation as unreasonable.**

Home Loan also contends that St. Paul unreasonably concocted three excuses to deny Home Loan's claim:

1. During the claims investigation, St. Paul noted that White Hall was not in foreclosure.

2. St. Paul stated that Home Loan had declined to accept the White Hall deed in lieu of foreclosure.

3. St. Paul denied the claim because Home Loan was not a mortgagee in possession.

No jury could legitimately regard these as unreasonable excuses. St. Paul did what it was supposed to do: investigate the claim and ask its insured (Home Loan) about concerns that had arisen during the investigation. To decide whether Home Loan was entitled to benefits, St. Paul needed to identify who had possession, care, custody, or control of White Hall when the fire broke out.

In carrying out that investigation, St. Paul expressed concern that Home Loan had not foreclosed on White Hall or obtained the deed. These expressions of concern were not excuses, for Home Loan acknowledged that St. Paul was correct: Home Loan had not foreclosed on White Hall or obtained a deed in lieu of foreclosure. In these circumstances, the jury could not possibly regard St. Paul's expressions of concern as unreasonable excuses.

16

The remaining so-called excuse is what St. Paul ultimately relied on: Home Loan was not a mortgagee in possession. In my view, as explained above, this conclusion was reasonable as a matter of law. As a result, no jury could justifiably regard St. Paul's investigation as unreasonable based on its so-called excuses, all of which the trial evidence confirmed.[4]

## 8.    Conclusion

The majority and I differ in our interpretation of St. Paul's argument. In my view, St. Paul argues that it is entitled to judgment as a matter of law on the ground that Home Loan did not present any evidence of unreasonable conduct in the claims-handling stage. On this argument, I agree with St. Paul and would (1) reverse the denial of St. Paul's motion for judgment as a matter of law and (2) remand with instructions to enter judgment for St. Paul on the statutory claim. As a result, I respectfully dissent.

---

[4]    On appeal, St. Paul also argues that the district court (1) improperly denied a motion for a new trial on the statutory claim and (2) erred in calculating statutory damages. In my view, we need not address these arguments because St. Paul is entitled to judgment as a matter of law on the statutory claim.